UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

AT CHARLESTON

CHARLESTON AREA MEDICAL
CENTER, INC.,

       Plaintiff,

v.                        Civil Action No. 2:16-0333

LEILA ELLEN SAKHAI, M.D.,

       Defendant.


MEMORANDUM OPINION AND ORDER


       Pending is plaintiff Charleston Area Medical Center, Inc.'s ("CAMC") motion to dismiss counts three and four of defendant's counterclaim, filed May 3, 2016.


I.


       Plaintiff CAMC instituted this action by filing a complaint with this court on January 14, 2016, invoking the jurisdiction of the court on the basis of diversity jurisdiction.  In the complaint, CAMC alleges that on June 25, 2012, CAMC Teays Valley Hospital, Inc. ("CAMC Teays Valley"), which thereafter merged into CAMC on March 1, 2013, entered into a Recruitment and Commercial Loan and Security Agreement ("the

Recruitment Agreement") with defendant Leila Ellen Sakhai, M.D. ("Dr. Sakhai").  Pl. Compl. at ¶ 7; Exhibit A to Pl Compl. Under the terms of the Recruitment Agreement, CAMC Teays Valley (now CAMC) was to provide "recruitment incentives to [Dr. Sakhai], including without limitation a commercial recruitment loan, to assist [Dr. Sakhai] in establishing her medical practice in the geographic area served by CAMC Teays Valley." Pl. Compl. at ¶ 8.

On July 10, 2012, Dr. Sakhai executed and delivered to CAMC Teays Valley a Commercial Loan Promissory Note ("the Note") in the amount of $30,000.00, in accordance with the terms of the Recruitment Agreement.  Id. at ¶ 9; Exhibit B to Pl. Compl.  The terms of the Note stated that Dr. Sakhai was to repay the balance of the loan with interest, in thirty-six monthly payments beginning September 30, 2012.  Pl. Compl. at ¶ 9. Interest on the principal amount accrued at four and one fourth percent per annum, amortized over the life of the loan.  Id. Any amount of the note unpaid when due would bear a twelve percent interest rate per annum until the default was cured. Id.  Under the Recruitment Agreement, CAMC Teays Valley agreed to forgive each monthly payment due under the Note as long as Dr. Sakhai performed her duties under the Recruitment Agreement,

2

which included continuing her medical practice in the community of Teays Valley ("the Community").  Id. at ¶ 10.

On July 18, 2012, CAMC Teays Valley and Dr. Sakhai entered into an Income Guarantee and Commercial Loan Agreement, ("the Income Agreement") under which CAMC Teays Valley agreed to extend a line of credit to Dr. Sakhai in order to cover expenses in her medical practice.  Id. at ¶¶ 11, 12; Exhibit C to Pl. Compl.  Under the terms of the Income Agreement, Dr. Sakhai, among other things, agreed to continue her medical practice in the Community.  Pl. Compl. at ¶ 12.  That same day, pursuant to the Income Agreement, Dr. Sakhai executed and delivered to CAMC Teays Valley a Revolving Credit Note, with a maximum principal amount of $372,611.50 ("the Revolving Note").  Id. at ¶ 13; Exhibit D to Pl. Compl.  Interest on the note accrued at one percent per annum until the end of the Credit Period, and thereafter at the prime lending rate published in The Wall Street Journal on the day following the end of the Credit Period, plus one percent per annum, until paid in full.  Pl. Compl. at ¶ 13.  Dr. Sakhai was to repay the Revolving Note by monthly installment payments in accordance with the schedule contained in the Income Agreement.[1]  Id. at ¶ 14; see Exhibit C

---

[1] Although CAMC cites to the document containing the schedule by which Dr. Sakhai was to repay CAMC Teays Valley under the terms

to Pl. Compl.  These monthly installment payments were to be forgiven by CAMC Teays Valley as long as Dr. Sakhai performed her obligations under the Income Agreement, which included continuing her medical practice in the Community.  Pl. Compl. at ¶ 14.

Under both the Recruitment Agreement and the Income Agreement, Dr. Sakhai's failure to maintain a practice in the Community was an event of default.  Id. at ¶ 15.  Upon default, the balances under the Note and Revolving Note were to be immediately due and payable.  Id.

CAMC alleges that on or around June 1, 2015, Dr. Sakhai notified CAMC through her counsel that she was terminating her medical practice in the Community, effective May 31, 2015.  Id. at ¶ 16.  On or about July 1, 2015, Dr. Sakhai established a practice with the Naples Women's Center in Naples, Florida.  Id. at ¶ 17.  Because Dr. Sakhai terminated her medical practice in the Community, she was in default under the terms of the Recruitment Agreement and the Income Agreement. Id. at ¶ 15.  Despite her default, Dr. Sakhai has not paid the balances that became immediately due and payable under the Note and the Revolving Note.  Id. at ¶ 18.  CAMC alleges that as of

---

of the Income Agreement, it is not included in the exhibits to CAMC's complaint.

December 31, 2015, Dr. Sakhai owes it $2,854.26 from the Note, which includes $188.32 in accrued and unpaid interest that continues to accrue at the default rate of twelve percent per annum. Id. at ¶ 19. In addition, CAMC contends that as of December 31, 2015, Dr. Sakhai owes it $164,437.37 from the Revolving Note, which includes $3,997.54 in accrued and unpaid interest that continues to accrue at the rate of four and one fourth percent per annum. Id. at ¶ 20.

CAMC makes two claims against Dr. Sakhai in its complaint. Count one alleges breach of contract of the Recruitment Agreement and the Income Agreement in Dr. Sakhai's failure to pay the outstanding balances of the Note and the Revolving Note. Id. at ¶¶ 21-26. Count two alleges a claim of unjust enrichment in that Dr. Sakhai used and benefited from the Recruitment Agreement and the Income Agreement and the corresponding notes from CAMC, and she will be unjustly enriched unless she is required to pay CAMC the amounts due under the Note and the Revolving Note. Id. at ¶¶ 27-32. As damages, CAMC asks for: $2,854.26 due under the Note as of December 31, 2015, and pre-judgment interest in the amount of twelve percent per annum; $164,437.37 due under the Revolving Note as of December 31, 2015, and pre-judgment interest in the amount of four and one fourth percent per annum; post judgment interest on both the

5

Note and Revolving Note in the maximum rate allowed by law; and any other relief the court deems appropriate.  Id. at p. 7.

On April 12, 2016, Dr. Sakhai answered the complaint and asserted four counterclaims against CAMC.  In count one of her counterclaim, Dr. Sakhai alleges that CAMC breached the Recruitment Agreement by failing to perform certain duties, including: assisting Dr. Sakhai in developing her practice, making required payments on Dr. Sakhai's behalf, providing her with insurance assistance, and by breaching its duty of good faith and fair dealing.  Def. Answer and Counterclaim at ¶¶ 3-8. In her count two, Dr. Sakhai alleges that CAMC's failures in performing its duties under the Recruitment Agreement caused CAMC to be unjustly enriched and that Dr. Sakhai is entitled to damages for the unjust enrichment "in an amount equal to the benefit to [CAMC] of the value of her services under the Recruitment Agreement."  Id. at ¶¶ 9-13.

In count three, Dr. Sakhai alleges that CAMC tortiously interfered with one of Dr. Sakhai's contracts, presumably the Recruitment Agreement or the Income Agreement. According to Dr. Sakhai, CAMC and West Virginia University ("WVU") engaged in a joint business venture relationship to teach and supervise medical students and new doctors.  Id. at ¶ 15.  She appears to allege that Dr. Byron Calhoun, who was an

6

employee of WVU, acted as an agent of the joint venture and refused to treat some of her patients on a discriminatory basis. Id. at ¶¶ 14-21.  This "intentional interference" by Dr. Calhoun, she contends, resulted in a loss of business and financial harm to her.  Id. at ¶¶ 22-23.

In count four, Dr. Sakhai alleges a claim of impossibility of performance.  According to her, "[a]s a direct and proximate result of the intentional interference of Dr. Calhoun with [Dr. Sakhai's] practice, among other problems presented by Dr. Calhoun, performance under the Recruitment Agreement and the Income Agreement was impossible for [her]." Id. at ¶¶ 24-25.

Dr. Sakhai seeks damages for breach of contract and unjust enrichment, pre- and post-judgment interest, dismissal of CAMC's complaint with prejudice, attorney fees and costs, and such other relief as the court deems just and equitable.[2]  Id. at p. 9-10.

CAMC has filed a motion to dismiss counts three and four of Dr. Sakhai's counterclaim for failure to state a claim

---

[2] Although she does not so state in her counterclaim, presumably Dr. Sakhai also seeks damages for CAMC's alleged tortious interference and for impossibility of performance.

7

upon which relief can be granted under Rule 12(b)(6).  Pl. Mot.
to Dismiss Counts Three and Four of Counterclaim at 1.  CAMC
states that neither claim makes allegations against it, but
instead refers to a third party, Dr. Calhoun.  Id. at 2-3.  In
addition, even if either claim included allegations against
CAMC, CAMC argues that the claims fail as a matter of law.  Id.

Dr. Sakhai has responded, arguing that each of the
counterclaims state a claim upon which relief can be granted, to
which CAMC has filed its reply.[3]

II.

a.  Governing Standard

Federal Rule of Civil Procedure 8(a)(2) requires that
a pleader provide "a short and plain statement of the claim
showing . . . entitle[ment] to relief."  Fed. R. Civ. P.
8(a)(2); Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007).  Rule
12(b)(6) correspondingly permits a defendant to challenge a
complaint when it "fail[s] to state a claim upon which relief
can be granted . . . ."  Fed. R. Civ. P. 12(b)(6).

---

[3] As CAMC notes in its reply brief, Dr. Sakhai's response brief
was untimely filed.  See Pl. Reply in Supp. of Mot. to Dismiss
Counts Three and Four of Counterclaim at 1, n.1.  CAMC filed and
served its motion to dismiss on May 3, 2016.  Dr. Sakhai did not
file its response brief until May 27, 2016, seven days after it
was due.  The court finds the delay harmless.

The required "short and plain statement" must provide
"'fair notice of what the . . . claim is and the grounds upon
which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544,
545 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957),
overruled on other grounds, Twombly, 550 U.S. at 563); see also
Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007).
In order to survive a motion to dismiss, "a complaint must
contain sufficient factual matter, accepted as true, to 'state a
claim to relief that is plausible on its face.'" Ashcroft v.
Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S.
at 570); see also Monroe v. City of Charlottesville, 579 F.3d
380, 386 (4th Cir. 2009).

Application of the Rule 12(b)(6) standard requires
that the court "'accept as true all of the factual allegations
contained in the complaint . . . .'" Erickson, 127 S. Ct. at
2200 (quoting Twombly, 127 S. Ct. at 1965); see also South
Carolina Dept. Of Health And Environmental Control v. Commerce
and Industry Ins. Co., 372 F.3d 245, 255 (4th Cir. 2004)
(quoting Franks v. Ross, 313 F.3d 184, 192 (4th Cir. 2002)).
The court must also "draw[] all reasonable . . . inferences from
th[e] facts in the plaintiff's favor . . . ." Edwards v. City
of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

### b. Applicable Law

Because the contracts at issue in this case were made in West Virginia and to be performed there, West Virginia law applies.  See General Elec. Co. v. Keyser, 166 W. Va. 456, 275 S.E.2d 289, Syl. Pt. 2 (1981) ("The law of the state in which a contract is made and to be performed governs the construction of a contract when it is involved in litigation in the courts of this state.") (internal citations and quotations omitted); see also Exhibits A-D to Pl. Compl.  Furthermore, the Recruitment Agreement states that "[a]ll questions pertaining to the validity, construction or performance hereof shall be determined in accordance with the laws of the State of West Virginia."  See Exhibit A to Pl. Compl. at p. 7-8.  The Note and the Income Agreement contain similar provisions providing that West Virginia law is to be applied in disputes arising out of the agreements.  See Exhibit B to Pl. Compl. at p. 3; Exhibit C to Pl. Compl. at p. 10.  Although the Revolving Note does not contain a similar provision, it states that it is subject to the terms and condition of the Income Agreement.  See Exhibit D to Pl. Compl. at p. 1-2.  Accordingly, the court will determine whether Dr. Sakhai has stated claims entitling her to relief under West Virginia law.

10

III.

a. Count Three: Tortious Interference

CAMC alleges that count three of Dr. Sakhai's counterclaim must be dismissed for two reasons.  First, it states that count three alleges no facts that it interfered with any contract because all allegations are directed towards a third party, Dr. Calhoun.  Pl. Memo. in Supp. of Mot. to Dismiss Counts Three and Four of Counterclaim at 4.  Second, CAMC contends that even if Dr. Sakhai had included allegations in her counterclaim that supported a claim against CAMC, the claim must still be dismissed because a cause of action for tortious interference of a contract may not be made against a party to that contract.  Id.

The allegations in Dr. Sakhai's third count are not entirely clear, but, making all reasonable inferences, it appears that in count three, she claims that CAMC and WVU engaged in a joint venture whereby CAMC was to teach and supervise medical students and new doctors.  Def. Answer and Counterclaim at ¶ 15.  Dr. Calhoun, who was employed by WVU, and who allegedly acted as an agent of the joint venture of CAMC and WVU, "disparag[ed], demean[ed] and insult[ed]" Dr. Sakhai and intentionally refused to treat some of her patients on a discriminatory basis.  Id. at ¶¶ 14-23.  These actions allegedly

11

caused losses to Dr. Sakhai's business and caused her to suffer financial harm.  <u>Id.</u>  Through Dr. Calhoun, acting as an agent of CAMC and WVU's purported joint venture, CAMC is alleged to have tortiously interfered with the Recruitment Agreement and the Income Agreement, or potentially a third agreement between CAMC and Dr. Sakhai whereby CAMC was to provide "specialists to aid in the development of [Dr. Sakhai's] practice."  Pl. Resp. in Opp. to Def. Mot. to Dismiss Counts Three and Four of Counterclaim at 3-4.

Taking all of these allegations as true, Dr. Sakhai fails to state a claim upon which relief can be granted.  As CAMC notes, in order to establish a prima facie case of tortious interference, a party must show:

(1)  existence of a contractual or business relationship or expectancy;
(2)  an intentional act of interference <u>by a party outside that relationship or expectancy</u>;
(3)  proof that the interference caused the harm sustained; and
(4)  damages.

<u>Torbett v. Wheeling Dollar Sav. & Trust Co.</u>, 173 W. Va. 210, 314 S.E.2d 166, Syl. Pt. 2 (1983) (emphasis added).  Thus, under this framework, a party may not tortiously interfere with a contract to which it is a party.  <u>See Hatfield v. Health Mgmt. Assocs. Of West Virginia</u>, 223 W. Va. 259, 672 S.E.2d 395, Syl. Pt. 6 (2008) ("It is impossible for one party to a contract to

maintain against the other party to the contract a claim for tortious interference with the parties' own contract.") (internal citations omitted).  Moreover, no cause of action for tortious interference of a contract may stand where an agent allegedly interferes with a contract of its principal.  See Cotton v. Otis Elevator Co., 627 F. Supp. 519, 522 (S.D. W. Va. 1986) ("A corporation cannot tortiously interfere with an agreement to which it is a party and accordingly, where an agent breaches a contract to which his principal is a party on behalf of his principal, no cause of action for tortious interference with regard to such contract can be had.").

Although Dr. Sakhai does not state in her counterclaim which contract that Dr. Calhoun, acting as an agent of the purported CAMC and WVU joint venture, tortiously interfered with, Dr. Sakhai has failed to mention in her counterclaim any contract to which she, but not CAMC, is a party.  See Pl. Reply in Supp. of Mot. to Dismiss Counts Three and Four of Counterclaim at 2-3.  CAMC and Dr. Sakhai are both parties to the Recruitment Agreement and the Income Agreement, meaning that Dr. Sakhai may not state a cause of action for CAMC's interference with them.  See Hatfield, 223 W. Va. 259, 672 S.E.2d 395, Syl. Pt. 6.  Dr. Sakhai's response in opposition to the motion to dismiss counts three and four of the counterclaim

refers to an agreement, as earlier noted, between CAMC and Dr. Sakhai where "CAMC contracted with Dr. Sakhai to provide specialists to aid in the development of her practice."  Def. Resp. in Opp. to Mot. to Dismiss Counts Three and Four of Counterclaim at 3-4.  Dr. Sakhai provides no details of this purported agreement.  In CAMC's reply, it makes the unchallenged statement that such a provision was not part of the Recruitment Agreement or the Income Agreement, and, upon examination of the agreements, the court does not find such a condition.  <u>See</u> Pl. Reply in Supp. of Mot. to Dismiss Counts Three and Four of Counterclaim at 3; <u>see also</u> <u>Exhibits A and C</u> to Pl. Compl.  If Dr. Sakhai is alleging CAMC interfered with a third agreement that she describes as an agreement for CAMC to provide specialists to aid in her practice, although she provides no evidence of its existence, CAMC would presumably be a party to that very agreement.  Accordingly, because CAMC is a party to the contracts Dr. Sakhai alleges it interfered with, a cause of action against CAMC for tortious interference may not be maintained.

### b. <u>Count Four: Impossibility of Performance</u>

CAMC also alleges that count four does not assert a cause of action against it and does not reference any conduct by CAMC that would entitle Dr. Sakhai to relief.  Pl. Memo. in

14

Supp. of Mot. to Dismiss Counts Three and Four of Counterclaim at 5. Even if count four asserted conduct committed by CAMC, it contends that, under West Virginia law, impossibility of performance is a legal excuse or defense to the failure to perform a contract, but is not a cognizable cause of action. Id. Indeed, Dr. Sakhai has pled impossibility of performance as a defense to CAMC's claim of breach of contract. Def. Answer and Counterclaim at ¶ 36.

Dr. Sakhai argues that count four pleads facts sufficient to state a claim for impossibility because "(1) the interference of Dr. Calhoun with her practice made performance of her duties under the Agreements impossible[;] and (2) that she assumed specialist doctors would be provided to her by CAMC as a basic assumption upon which the contract was made." Def. Memo. in Opp. to Pl. Mot. to Dismiss Counts Three and Four of Counterclaim at 4.

In count four Dr. Sakhai alleges that due to Dr. Calhoun's interferences with Dr. Sakhai's practice, presumably through his refusal to treat some of Dr. Sakhai's patients for discriminatory reasons, and "other problems presented by Dr. Calhoun" that Dr. Sakhai does not explain, her performance of the Recruitment Agreement and the Income Agreement was impossible. Def. Answer and Counterclaim at ¶ 24-25.

Under West Virginia law, impossibility of performance is not a cause of action, but is instead a defense or excuse for a party's failure to perform its obligations under a contract. See Waddy v. Riggleman, 216 W. Va. 250, 260, 606 S.E.2d 222, 232 (2004) (referring to the doctrines of impossibility and impracticability as defenses); O'Dell v. Criss & Shaver, 123 W. Va. 290, 14 S.E.2d 767 (1941) (calling impossibility "an excuse for the nonperformance of a contract"); Corpus Juris Secundum, 17B C.J.S. Contracts § 688 ("Impossibility of performance is a well-recognized defense to nonperformance of an executory contract."). Inasmuch as the defense of impossibility or impracticability is not appropriately raised as a cause of action under West Virginia law, Dr. Sakhai has failed to state a claim in count four of her counterclaim upon which relief can be granted. See Ashcroft, 129 S. Ct. at 1949.

## IV.

For the foregoing reasons, it is ORDERED that CAMC's motion to dismiss counts three and four of Dr. Skahai's counterclaim be, and it hereby is granted. It is further ordered that counts three and four of Dr. Sakhai's counterclaim be, and they hereby are, dismissed.

16

The Clerk is directed to transmit copies of this order to counsel of record and any unrepresented parties.

ENTER: November 14, 2016

John T. Copenhaver, Jr.
United States District Judge